IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 13–cv–02497–KMT

MARIA LOYA,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

## ORDER

This case comes before the court on review of the Commissioner's denial of Plaintiff

Maria Loya's application for Disability Insurance Benefits ("DIB") pursuant to Title II of the

Social Security Act, 42 U.S.C. §§ 401-33 ("the Act").  Jurisdiction is proper under 42 U.S.C. §

405(g).

### FACTUAL AND PROCEDURAL BACKGROUND

In June 2009, Plaintiff filed an application for DIB under Title II of the Act, alleging

disability due to problems with her right knee, left elbow, and right shoulder.  (Doc. No. 10,

Social Security Administrative Record ("AR") at 71, 176-77, 255.)  Following a June 2012

administrative hearing (AR at 25-55), an ALJ denied Plaintiff's application (AR at 10-20).

Plaintiff filed this appeal on September 13, 2013.  (Doc. No. 1, Compl.)  Plaintiff's

arguments on appeal focus on the administrative hearing.  (Doc. No. 13, Opening Br. At 4-10;

AR at 14-18.)  In April 2012, the agency sent Plaintiff notice of a hearing to be held in June

2012.  (Tr. At 141.)  That notice informed Plaintiff that the ALJ planned to use

videoteleconferencing to conduct the hearing.  (AR at 142.)  The notice also informed Plaintiff

that she had a right to an in-person hearing and gave her directions how to request an in-person

hearing.  (AR at 142.)  Plaintiff returned the acknowledgement of hearing form and did not

indicate that she wanted to appear in person.  (AR at 142, 152.)  Neither Plaintiff nor her attorney

objected to appearing at the hearing by video.  (AR at 25-55.)  At the hearing both Plaintiff (AR

at 29) and a vocational expert (AR at 44) testified.[1]

At the outset of the hearing, Plaintiff's attorney stipulated to the vocational expert's

qualifications.  (AR at 44.)  The expert first testified that Plaintiff had worked in the past as a

produce clerk, a deli clerk, and as a cashier.  (AR at 45.)  The ALJ then posed a hypothetical

question to the vocational expert, asking her to assume an individual with Plaintiff's age,

education, and past relevant work, with the following residual functional capacity:

- She could lift or carry less than 10 pounds frequently and 10 pounds
  occasionally;
- She could stand or walk with normal breaks for four hours in an eight-hour day
  and may use a cane to ambulate;
- She could push and pull with her right leg only occasionally;
- She could handle, finger, and feel with her left, nondominant, arm only
  frequently
- She could occasionally reach over head with her right, dominant, arm;
- She could occasionally climb ramps and stairs, balance, stoop, crouch, kneel,
  and crawl, but never climb ladders, ropes, or scaffolds.

(AR at 45-46.)  The vocational expert testified that such a hypothetical individual could not

perform Plaintiff's past relevant work.  (AR at 46.)  However, given skills Plaintiff had learned

from her past work, the vocational expert testified that such a hypothetical individual could work

---

[1] The ALJ found Plaintiff not fully credible.  (AR at 15.)  Plaintiff does not challenge that
finding.  (Opening Br. at 4-10; Reply at 1.)

as a tube room cashier, a check cashier, and a food cashier.  (AR at 46-49, *see* AR at 19.)  The

vocational expert clarified that, in addition to the Dictionary of Occupational Titles (DOT), her

testimony was based in part on her professional experience.  (AR at 52.)

The ALJ determined that Plaintiff was not disabled under the Act since her May 21, 2009

alleged onset of disability.  (AR at 12.)  The ALJ found that Plaintiff retained the ability to

perform a range of sedentary work as described in detail in the hypothetical question to the

vocational expert.  (AR at 14; *see* AR at 45-46.)  Relying on the vocational expert's testimony,

the ALJ found that Plaintiff could perform a significant number of jobs in the national economy.

(AR at 18-19.)  Thus, the ALJ found Plaintiff not disabled under the Act.  (AR at 19.)

After the ALJ rendered her decision finding Plaintiff not disabled, Plaintiff's attorney

referred Plaintiff to Bonnie Ruth for a vocational evaluation.  (AR at 483-89.)  Dr. Ruth

disagreed with both the vocational expert's testimony and the ALJ's decision.  (AR at 489.)

Nevertheless, the ALJ's decision became the final administrative decision when the Appeals

Council denied Plaintiff's request for review in August 2013 (AR at 1-6).  20 C.F.R. § 404.981.

## STANDARD OF REVIEW

This appeal is based upon the administrative record and briefs submitted by the parties.

The Commissioner has established a five-step sequential evaluation process for

determining whether a claimant is disabled:

> 1.      The ALJ must first ascertain whether the claimant is engaged in
> substantial gainful activity. A claimant who is working is not disabled regardless
> of the medical findings.
> 2.      The ALJ must then determine whether the claimed impairment is
> "severe."  A "severe impairment" must significantly limit the claimant's physical
> or mental ability to do basic work activities.
> 3.      The ALJ must then determine if the impairment meets or equals in
> severity certain impairments described in Appendix 1 of the regulations.

> 4.      If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.
>
> 5.      If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy.  This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(a)(4)(i)-(v).  *See also Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.*  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence.  *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown*, 912 F.2d at 1196.  It requires more than a scintilla but less than a preponderance of the evidence. *Hedstrom v. Sullivan*, 783 F.Supp. 553, 556 (D. Colo. 1992).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).  The court "meticulously examine[s] the record

as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). However, the court may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Thompson*, 987 F.2d at 1487.

## ANALYSIS

### A.      *Additional Evidence Submitted to Appeals Council*

Plaintiff argues that the Appeals Council accepted the report of Dr. Ruth but did not discuss the evidence in its Notice of Appeals Council Action. (Opening Br. at 5.)

The Tenth Circuit has held that the Appeals Council is not required to conduct an analysis of new evidence when the Council states it has reviewed the evidence and found it provides no basis for changing the ALJ's decision. *Robinson v. Astrue*, 397 F. App'x 430 (10th Cir. 2010); *Martinez v. Astrue*, 389 F. App'x 866 (10th Cir.2010). In *Martinez*, the Circuit reasoned as follows:

> Contrary to Mr. Martinez's argument, we do not assume the Appeals Council failed to properly consider evidence simply because it chose not to discuss the evidence in its order denying review. Our case law requires only that the Appeals Council consider properly submitted evidence that is new, material, and temporally relevant. *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003); *see* 20 C.F.R. § 404.970(b). "If the Appeals Council fails to consider qualifying new evidence, the case should be remanded for further proceedings." *Threet*, 353 F.3d at 1191. But if, as happened here, the Appeals Council explicitly states that it considered the evidence, there is no error, even if the order denying review includes no further discussion. *See  Martinez v. Barnhart*, 444 F.3d 1201, 1207-08 (10th Cir.2006) (noting that analysis of new evidence by the Appeals Council would have been helpful, but was not required); *cf. Threet*, 353 F.3d at 1191-92 (reversing and remanding where Appeals Council gave no indication that it considered qualifying new evidence). We take the Appeals Council at its word "when it declares that it has considered a matter." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). Accordingly, we see no error in the Appeals Council's action here.

*Martinez*, 389 F. App'x at 868-69.

Here, the Appeals Council specifically stated in its order denying review that it considered "the additional evidence listed on the enclosed Order of Appeals Council" (AR at 1), including Dr. Ruth's "Vocational Evaluation dated September 1, 2012" (AR at 6).  The Appeals Council also stated that the information "does not provide a basis for changing the Administrative Law Judge's decision."  (AR at 2.)  Thus, under *Robinson* and *Martinez*, there is no error in the Appeals Council's failure to discuss Dr. Ruth's report.

**B.     *Appearance of Plaintiff by Videoconference at Hearing Before ALJ***

Plaintiff argues that she did not receive a full and fair hearing before the ALJ because she attended the hearing by videoconference.  (Opening Br. at 6-7.)  Plaintiff argues her attendance by videoconference "detract[ed] from the ability of the fact finder to make the determination of credibility."  (*Id.* at 7.)

Plaintiff has proffered nothing to show that, as a matter of law or procedure, a videoconference is an improper mechanism for adjudicating a social security claim.  To the contrary, the applicable regulations explicitly provide the ALJ with the authority to allow or direct the appearance of any party via "video teleconferencing."  20 C.F.R. § 404.936(c).  The regulations further set forth a specific procedure for a claimant to object to a video teleconference hearing, which will then constitute good cause for the ALJ to convert the video teleconference hearing into an in-person one. Id. § 404.936(d)-(e).  The record contains nothing to show that at any point prior to or at the hearing did Plaintiff, who was also represented by counsel, object to conducting the hearing via teleconference.  To the contrary, Plaintiff concedes

that she "did not want to delay the hearing further by requesting an in person hearing." (Opening

Br. at 6.)

Plaintiff appears to claim that that she was prejudiced because "the ALJ at one point

stated . . . that she was not able to see [Plaintiff]." (Opening Br. at 7 [citing AR at 31].)

However, a review of the entire pertinent portion of transcript cited by Plaintiff demonstrates that

the ALJ was unable to see Plaintiff for only a brief moment. (AR at 31 ["All right, I'm moving

the wrong camera, I'm sorry. I'm trying, now that you're standing up, I can't see you and while

I'm walking. So our camera is by Ms. Loya. Oh, now, she sat down. Oh, good."].)

Moreover, Plaintiff's contention that her attendance at the hearing by videoconference

"detract[ed] from the ability of the [ALJ] to make the determination of credibility" is insufficient

to warrant another hearing because, in this appeal, Plaintiff specifically does not contest the

ALJ's credibility finding. (Reply at 1 ["Plaintiff has not challenged the ALJ's findings on

credibility in this case."].)

The court finds no error in the Plaintiff's appearance at the hearing by teleconference.

*C.*     ***Determination of Jobs Plaintiff Can Perform***

Plaintiff also argues that the vocational expert's testimony was not substantial evidence to

support the ALJ's step-five finding that Plaintiff could perform other work in the national

economy. (Opening Br. at 5, 7-10.)

Once the claimant demonstrates that her impairments prevent her from engaging in past

relevant work, the burden shifts at step five to the Commissioner to demonstrate "that the

claimant retains the residual functional capacity (RFC) to do other work that exists in the

national economy." *Thompson*, 987 F.2d at 1487. To meet this burden, the ALJ must prove,

with substantial evidence, that the claimant can work at a level lower than her past relevant work

on a daily basis. *Id.* at 1491. The ALJ may not rely on the absence of evidence as substantial

evidence as it "effectively shifts the burden back to the claimant." *Id.* at 1491.

The ALJ found that Plaintiff could not perform her past relevant work but that she

retained the ability to work as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work as
> defined in 20 CFR 404.1567(a), while sitting for up to four hours in a regular
> eight hour work day, and standing/walking for up to four hours, with the option to
> use a cane with any ambulation; lifting and carrying less than ten pounds
> frequently and up to ten pounds occasionally; no more than occasionally pushing
> and pulling with the right lower extremity within the aforementioned weight
> restrictions; no more than frequently handling, fingering or feeling with the non-
> dominant left upper extremity; only occasionally engaging in overhead reaching
> with the dominant right upper extremity; occasionally balancing, stooping,
> crouching, kneeling, crawling or climbing ramps or stairs; and while never
> climbing ladders, ropes or scaffolds.

(AR at 18, ¶ 5; 14.)

A treating physician's opinions are generally given controlling or considerable weight in

reviewing a disability claim. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

Examining opinions are entitled to less weight. *Robinson v. Barnhart*, 366 F.3d 1078, 1084

(10th Cir. 2004). "Supportability—the extent to which a medical source presents relevant

evidence to support an opinion—and consistency with the record are two of the factors relevant

to the weight that an ALJ gives to a medical opinion from any source." *McDonald v. Astrue*, 492

F. App'x 875, 882 (10th Cir. 2012). A physician who has treated a patient frequently over an

extended period of time is expected to have greater insight into the patient's medical condition.

*Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining

physician who only saw the claimant once is not entitled to the sort of deferential treatment

accorded to a treating physician's opinion."  *Id.* at 763 (citing *Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995)).

### *RFC as it Relates to Sitting*

Plaintiff argues that the ALJ "did not provide the parameters for how long [she] can sit at one time, or stand/walk at one time," despite the fact that the medical evidence supports a finding that Plaintiff needs to alternate positions because she can only sit for fifteen to twenty minutes at a time.  (Opening Br. at 8.)

Here, the ALJ noted that Plaintiff had functional capacity evaluations with occupational therapists in July 2009 and again in August 2011.  (AR at 17.)  The ALJ noted that the first occupational therapist opined that Plaintiff would be able to perform a limited range of sedentary work and that she could sit, stand, or walk for no more than six hours total in a regular day.  (*Id.*)  The ALJ noted that the second occupational therapist opined that Plaintiff would be able to perform a limited range of sedentary work with a minimal sitting limitation.  (*Id.*)  The ALJ gave the occupational therapists' opinions little weight because they are not physicians, they examined Plaintiff on only one occasion each, and their conclusions lack significant support from the objective medical evidence.  (*Id.*)

The ALJ also noted that Plaintiff was evaluated by Dr. Blanchard for a functional capacity assessment in October 2009.  (*Id.*)  Dr. Blanchard opined that Plaintiff "could stand for five hours, walk for less than two hours, and sit for up to four hours, albeit while using a cane with ambulation and while taking frequent breaks."  (*Id.*)  The ALJ gave Dr. Blanchard's opinion considerable weight, but stated the "evidence as a whole simply fails to support that the claimant's combination of symptoms would require such frequent breaks or positional changes,

especially when considering the lack of evidence indicating any significant spinal condition, and

the observations of Dr. Schriberger [Plaintiff's treating physician] indicating that the claimant is

doing well overall." (*Id.*)

Finally, because the Appeals Council "considered" Dr. Ruth's vocational evaluation, the

evaluation is a "part of the administrative record to be considered [by this court] when evaluating

[the ALJ's] decision for substantial evidence." *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir.

1994); *accord Threet*, 353 F.3d at 1191. However, "under the regulations, 'because

nonexamining sources have no examining or treating relationship with [the claimant], the weight

[the agency] will give their opinions will depend on the degree to which they provide supporting

explanations for their opinions." *Id.* "And '[g]enerally, the more consistent an opinion is with

the record as a whole, the more weight [the agency] will give to that opinion.' " *Id.* (quotation

omitted).

Dr. Ruth is a rehabilitation specialist who reviewed the Commissioner's decision to deny

Plaintiff's disability applications. (AR at 483.) The court concludes that Dr. Ruth's report does

not undermine the substantial evidence of record that supports the ALJ's decision. First, a

vocational expert is not an acceptable medical source to whom the ALJ must give deference. *See*

20 C.F.R. § 404.1513(a). Second, Dr. Ruth's report is based on her review of the medical

records pertaining only to the functional capacity evaluations done by the occupational therapists

in July 2009 and August 2011. (AR at 483.) The ALJ found the occupational therapists'

conclusions lack significant support from the objective medical evidence. (AR at 17.) Thus, Dr.

Ruth's opinion, like that of the occupational therapists, is not supported by the record. Where an

opinion of a vocational expert is based on evidence not supported by the record, the opinion has

no evidentiary value.  *Mondragon v. Barnhart*, Civil Action Nos. 04F1631, 04F2104, 2005 WL

6782550, at \*7 (D. Colo. Dec. 29, 2005) (citing *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir.

1996)).

The court finds no basis for concluding that the ALJ's decision is not supported by ample

medical evidence, or that the ALJ applied incorrect legal standards regarding the RFC as it

relates to Plaintiff's ability to sit.

### RFC as it Relates to "Reaching" Requirement of Job Positions

Plaintiff also argues that the vocational expert testified that the jobs at which Plaintiff

could work—tube room cashier, check cashier, and food cashier—require frequent reaching,

while the AJL found Plaintiff is limited to occasional reaching with the dominant right upper

extremity.  (Opening Br. at 8.)  In its response brief, Defendant fails to address this argument.

The vocational expert testified at the hearing that the tube room cashier, check cashier,

and food cashier positions require frequent reaching, frequent handling, and frequent fingering.

(*See* AR at 48, 52-53.)  In the RFC, the ALJ specifically determined Plaintiff may perform

sedentary work that requires "no more than frequently handling, fingering or feeling with the

non-dominant left upper extremity; only occasionally engaging in <u>overhead</u> reaching with the

dominant right upper extremity."  (AR at 18, ¶ 5) (emphasis added).  The vocational expert did

not testify, however, that the "frequent reaching" required for the jobs she listed is not <u>overhead</u>

reaching.  (*See* AR at 48, 52-53.)  This failure of evidence falls on the Commissioner, as it is her

burden, not Plaintiff's, to develop vocational evidence at step five.  *Thompson*, 987 F.2d at 1487.

The court finds no record evidence which supports the ALJ's step five finding as it relates to the reaching requirement for the jobs the vocational expert determined Plaintiff could perform, and remand is necessary to correct this error.[2]

Accordingly, it is

**ORDERED** that the Commissioner's decision is **REVERSED** and this case is **REMANDED** to the Commissioner for rehearing in accordance with this Order. It is further

**ORDERED** that Plaintiff is awarded costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated this 20th day of March, 2015.

BY THE COURT:

Kathleen M Tafoya
United States Magistrate Judge

---

[2] In light of the remand of this matter, the court need not address Plaintiff's final argument, that the DOT job descriptions given by the vocational expert are not up to date, non-existent, or not as described.  (*See* Opening Br. at 8).